The panel has before it a total of five cases. Before dealing with those that are being submitted, I want to thank, on behalf of our entire court, District Judge Hatchberg from the District of New Jersey. She sat with the panel yesterday and she's with us again today. She appears as a part of our ongoing program of having selected district judges from around the country sit with us on regular panels. We've been doing that since September of 2006 and have her colleagues booked, one might say, for about a year in advance of today. So thank you for your service and your appearance. Thank you. It's my pleasure. We're going to hear argument in three cases as the list discloses, but the other two cases will be submitted on the brief for that argument later today. They are specifically Appeal 2007-7267 Brown v. Department of Veterans Affairs and Appeal 2008-3072 Gross Close v. Department of the Navy. We'll hear argument first this morning in Appeal 2007-7265 Whiting v. Department of Veterans Affairs. Mr. Carpenter, welcome back to the court. Good morning to you. Thank you very much, Your Honor. Please proceed, but first tell me if your client's name is being correctly pronounced. I believe it's Whiting. Whiting, thank you. Very well, go ahead. May it please the court, Kenneth Carpenter appearing on behalf of Kevin Whiting. Mr. Whiting appeals the decision below from the United States Court of Appeals for Veterans Claims. Mr. Whiting asserts that the court relied on misinterpretations of both the statute and the award of increased compensation. Mr. Whiting asserts that in order to correctly assign an effective date for a claim for increased compensation under 5110A and B, the VA must first determine the date of the claim for increased compensation based upon the facts found, based upon the entire record. Can I stop you there just to get some clarification? I was, I have to admit, I was utterly confused by some of the scenario here and the history of what happened. The, he, this claim is about his failure to award him TDIU benefits, right? The unemployability? Is that what you're seeking? I mean, what claim are we talking about? There have been several claims, one for PTSD, one for depression. What is this specific claim? What is at issue in this case, or what was at issue before the board was the effective date for the award of a total rating. A total rating can be awarded on the basis of both a scheduler criteria or an extra scheduler criteria. Mr. Whiting, Mr. Whiting asserts that the VA medical record from 1999, from his examination, clearly raised a increased claim for compensation based upon unemployability. That is a claim for an extra scheduler basis. But I guess what I'm, but this, this is couched as an effective date claim. I guess that was just take the TDIU claim on its own. It was never awarded. So I was unclear on why we were talking about an effective date of something that was, I mean, it seemed to me first you have to get the award and then you fight over the effective date. So I wasn't clear why this was an effective date case. Ultimately was an award of a total rating on the basis of a scheduler criteria. Mr. Whiting. So you're, what you're saying in sort of practical terms is you think he's entitled to an earlier effective date for a claim that would be greater than the one he received because it would include some extra money for the TDIU. That's right. The difference between the 50% rating, which he had at the time of the VA examination in 1999 and the award of an effective date for a total rating. And I'm sorry, I don't remember the current effective date. July 2000. Okay. Now then are you in effect saying that he actually got a scheduler rating of a hundred percent effective in 2000, whereas he should have gotten in your view a TDIU award 11 months earlier. I'm not going quite that far. He should have gotten at least consideration of the right to an extra scheduler rating based upon the VA examination, which was obviously a VA medical record, which raised that issue. The VA examination gave him a 50% on other grounds. You're saying he should have gotten a hundred percent back at the time based on this additional ground of unemployability. Well, actually the VA examination was part of a supplemental assertion on the part of Mr. Whiting that his disability came not only from major depressive disorder, which is what he was service-connected for, but also from post-traumatic stress disorder. That examination was undertaken for the purpose of determining whether he had post-traumatic stress disorder and whether that was or was not related. During the course of the examination, the doctor concluded affirmatively that there was a relationship with the post-traumatic stress disorder, but also stated that taking into consideration both his post-traumatic stress disorder and his major depressive depression, which is continuing and substantially interferes with his ability to obtain and continue work. You're reading from the 1999 exam? From the 1999 exam. What page of the appendix? Page 33 of the joint appendix. 33? Yes, I should have said that before I started. And so your complaint is that the RO, and what you're seeking his employability issue. Our argument before the both the board and the veterans court was, excuse me, before the veterans court was, is that the board had an affirmative duty under 7104A to consider 3.157B1, which is a unusual VA regulation, which basically puts the burden on the VA to examine its own medical records to determine whether there may or may not be an informal claim for increased compensation. So what you're arguing about and what you want is for either the RO or the board, I mean, you want this remanded back to the RO. I want it remanded back to the RO. Because your argument is that the RO never looked at this, but the reason I'm confused is that in the RO rating decision that was dated in 99, it seems to me the RO did not look at it. It seems to me, and it's on the same topic, that in the board's March 2005 opinion, it found as a finding of fact that prior to the July 13, 2000 report, there was no unadjudicated claim, whether it was informal or formal for disability due to unemployability. So if that's a finding of fact, why do we have jurisdiction? Because that didn't consider the provisions of 3.157B1 specifically. So you're saying it's a clearly erroneous finding of fact, but I don't think we have jurisdiction? And what I asked the court below was to find whether or not they had or had not failed to consider and apply this particular regulation. This regulation requires the VA to adjudicate from VA medical records, not for the board to do that. The board did make that finding of fact. That is correct. The question then becomes, and the question that was presented below was, whether or not the board had in fact failed to consider and apply this particular regulation, which required the VA to do that. Wait a second. When you say the VA, why should we not consider the board as much a part of the Veterans Department as the regional office? Because the board, Your Honor, is an appellate body that reviews decisions of the VA. Is it not the case that the board can consider additional evidence that was not before the RO and can even have the veteran come in and testify live? Yes, that's correct. So in some ways it's analogous to an appellate court, but in other ways it's like a trial court that can expand on the evidence and can make findings which ordinarily true appellate courts cannot. That's absolutely correct. So because of those characteristics, why shouldn't we consider the board part of the VA and therefore we can conclude that the VA did adjudicate what you want even though it wasn't the RO as you apparently would prefer? Because the board would have done that in the first instance without having afforded Mr. Whiting the opportunity to appeal that decision and submit additional evidence on that question. That would have been a final decision that would have been subject to review by the court. I'm not following you. Are you saying that he didn't present all the evidence he had as of the time the board adjudicated this unemployability claim? No, but he did not have an opportunity to respond to that. To respond to what? When you say that I don't understand. That decision made as your suggestion was made and as the Veterans Court found was made that the 1999 decision did not implicate unemployability. That determination, if it had been made by the VA in the first instance, would have been subject to a notice of disagreement, an opportunity to submit additional evidence to show why there was unemployability. Once that decision is made by the board. You represented him at the board. You knew all the strategic considerations that you are utilizing now. I don't understand how you were precluded before the board from presenting anything and everything you needed to present to the board. The question is whether or not how 3.157b1 operates. Does it operate to allow for an adjudication by the VA in the first instance? Or as you're suggesting, can the board do that? I'm suggesting that that is not appropriate to have the board do it in the first instance because it deprives the benefit to the veteran of the opportunity. Let's assume you're correct and I'm not following this clearly, but let's assume that for a moment. What I don't understand, and I must be missing something, is I read the R.O. decision, the rating decision, and they did consider the unemployability. That's the big gap here in my mind. I know there must be an easy answer to this. And can't you read the board's report? No, no, I'm sorry. I see where your confusion is. It says, in exceptional cases, and he talks about the and he says the veteran has not submitted evidence to showing the case is exceptional. The R.O. considered this as an informal claim for TDIU, which is exactly what you're saying they didn't. No, with respect, your honor, they did not. That's what the VA tried to sell in their brief. As I explained in my reply brief, the referral to this extra scheduler concept is under 3.321b1. That is an extra scheduler rating when the rating schedule does not allow for a rating that would be appropriate for the degree of disability. It is not a claim for unemployability under 3.340a. But it talks about with such related factors as marked interference with employment and it talks about the employment stuff. And he refers to the fact that, you know, problems, difficulty with the job. So I guess I have a hard time reading this and not concluding that the R.O. did consider the informal claim of unemployability. Well, your honor, what they considered was an extra scheduler rating under a different regulation. That regulation is for very narrow and specific circumstances, not for the circumstances of increased compensation based on unemployability. Unemployability is covered by two VA regulations at 3.340a and 416. This particular regulation deals with what they call an extra scheduler rating that is different from unemployability. It has to do with a marked interference with under a specific separate regulatory scheme. Now, your honor, I understand why there is that confusion. But there should not be any confusion that the VA did not address it under the appropriate regulation. But that is a separate issue, your honor, and that is an issue that the VA could decide before them that this decision was or was not handled correctly. If you are correct that because it did not have the specific applicable TDIU regulation in mind, the R.O. consideration of employment issues does not count as a TDIU decision, then we look next at what the board did. It seemed to me the board essentially held that looking at the record before it and the same record essentially was before the R.O., that a TDIU claim wasn't made out. Now, you agree with that, that that's essentially what the board said? No, I believe what they said was is that nothing in the evidence reflected unemployability. Now, to me, the difference there is is that they are making the ultimate decision on employability, not the question that is raised by 3.157B1 is, is this an informal claim for increased compensation? And if it is a claim for increased compensation, in this case, your honor, Mr. Whiting was rated at 50% before this decision and he was rated at 50% after this decision after they added post-traumatic stress disorder. They essentially found that yes, we're not, we're not reviewing whether 50% should have been some other percent. That's not before us. What do the regulations require that they didn't do? Show me what the, what does the regulation say? The regulation under 3.157B1 says that a VA medical record shall be accepted as an informal claim. If it says certain things, not just any old examination, if it doesn't say anything. If it raises the question of an entitlement to increased compensation, that's what 3.157B1 calls for and that is what was not done by the VA either in the first instance in 1991 and then the board attempted to do it in the first instance when they took the matter up for the first time. This matter should have been returned to the VA for the VA to make that determination. You keep saying VA, but you mean the RO, the regional office. That's correct, as opposed to... So you concede that they considered unemployability. What your complaint is that they didn't look at some extra scheduler rate increase? No, they looked at it under a very narrow parameter. What's the difference in standard they would apply under the narrow parameter versus the one you think they should have applied in assessing unemployability, which they did assess according to you, but under a different standard? Under the standard, under 3.340, the precise language is if a veteran's service-connected disability or disabilities prevent you from substantial gainful occupation, then you are entitled to a total rating. That's the one they used. That's the one they did not use. Which one did they use? They used 3.321. And what's the standard under 3.321 with respect to unemployability? Whether there is a marked interference with employability when the scheduler criteria does not provide for such a appropriate rating. So what was the difference? The ratings are capped and you are able under 3.321 to go over that cap. Let's assume that there was a back disability where you couldn't get more than a 40 percent rating, that you could use 3.321 to assess employment and as a consequence you could rate it at 60 or 70 or 80. You don't have to go to 100. Under 3.340, it's a total rating or it's nothing. So you're contending he lost his ability to seek a rating somewhere between 50 percent and 100 percent? No, he lost the right to consideration of this VA examination for the right for a total rating based on the fact he could not work. But that you said just conceded could have been given to him under the reg they applied? Under that particular regulation, that's correct, Your Honor. But they did not find that that was the basis for having considered that. They simply repeated the criteria for the regulation in their What is required, we believe, under 3.157B1 is an affirmative acknowledgment that this VA record constituted an informal claim for increased compensation and you will not find that in the 1999 decision. So there's some requirement that they say in the decision that there are words they have to use? I'm suggesting that that's what's required by the regulation. Tell me what in the regulation you're referring to when you say it's required. In 3.157B1, it says that a VA medical record will be accepted as an informal claim for increased compensation. I'm simply saying to you that if the decision does not indicate that, then there is no way for the veteran to know that that happened, that that in fact took place. There is a VA medical record that raises that issue that should have been addressed by the regional office in the first instance. But wasn't it addressed as part of his formal claim, his 1998 formal claim also included his allegations about being unable to work? No, because he made no such allegations in that. He simply was asking for additional compensation based upon the fact that he felt he had an additional disability from post-traumatic stress disorder. But the 99 report was considered as part of the totality of his claim that started in 98, correct? That's correct. But only for the purpose of determining whether he was entitled to service connection for post-traumatic stress disorder. There is no mention in that decision about increasing the rating and in fact they did not increase the rating. Now Mr. Carpenter, you pointed us to some concluding paragraphs by the VA Dr. Charles Oppegaard. Yes, at page 33. At page 33. But if you read the whole report, it seems to me it's quite confusing and ambivalent about the degree of employment problems. For example, on page 28 in the middle of the large paragraph and the center of page 28, it seems that he was successfully employed and he wasn't fired because he couldn't perform. He left on his own because he preferred to work at home if he could get some kind of computer work at home. So if you read that in conjunction with the part that you cited, it's not clear to me that the doctor is saying he's employed and left voluntarily of his own will not because he couldn't perform. But your honor, that is precisely the reason that 3.157b1 has to be recognized as an affirmative obligation on the part of the regional office in the first instance to make that determination to decide whether this VA medical record was or was not. All right, but suppose that you're correct that only the based on this August 1999 examination that we've been discussing. But later when the board looks at what happened, look to me in the board decision like the board was in effect saying, well, if it wasn't considered under the right standard, that was harmless error because under the right standard he would have to lose anyway. What's your response to that? My response to that is that they are going somewhere where they have no business going. They should have remanded the matter back to the VA for a decision. Are you saying that the veterans board is prohibited from finding a certain assumed error to be harmless on the factual record in a case? Under 3.157b1 where there is no adjudication, that is correct. The question before this court is the interpretation of that regulation. Where is their authority saying that the harmless error of power of the board is unavailable in the circumstance of this case? Well, your honor, there is no such authority at this point. But I believe that under the correct interpretation of this regulation, this is a unique regulation that puts an affirmative burden on the VA. There are lots of affirmative burdens on the VA and if failure to carry them out isn't prejudicial, the board often says so and we normally uphold that. I'm labeling that harmless error. The board didn't use that phraseology. But it seems to me clear that prejudice is required before a default procedural or substantive entitles someone to relief. Your honor, I think you just described the ambiguity that exists in this record and if this record had been allowed to be adjudicated as an informal claim, then Mr. Whiting would have had the opportunity to come forward with evidence in order to clarify that ambiguity either by getting the doctor to clarify or by getting another medical opinion that said this man was unable to work. Are you saying that you were shocked and surprised by the board's reference to unemployability and if only you had known the board was going to talk about unemployability, you would have put more evidence before the board than in fact they got? No, your honor. It's a question of whether or not the VA had the obligation under this regulation to adjudicate it in the first place. I'm assuming for purposes of the question that the VA did have such an obligation and that only the RO could discharge the obligation and that they didn't discharge it and therefore there was an error. But I'm saying nevertheless, if the board correctly finds that the error was harmless, why should there be any relief? Because it's a question of the opportunity in a non-adversarial system to present evidence before the adjudicator makes its decision. But didn't you just say you wouldn't have added any more evidence? I thought you were just asked that question a moment ago. I thought you said no to that question. I'm sorry. What evidence would you have added? They already considered the unemployability claim, albeit under a different regulatory section. What we would have put in was either clarification from the doctor that did the examination or we would have gotten another medical opinion that clarified that because of his now service-connected disabilities, he was unable to work from a time certain now up until the June 2000 date. Did you seek reconsideration by the board on the grounds that you were caught by surprise that they were adjudicating an issue you didn't think was before them and if you had only known you would have put in additional evidence? No, I did not. Well, is there a waiver that comes from the failure to say to the board, hey, wait a minute, you adjudicate something that we didn't know was in the mix, therefore we didn't present evidence on that extraneous thing you just adjudicated. You have to give us a chance to do that. You have to reopen your proceeding. I mean, why shouldn't a waiver come from that? Well, you know, I think that waiver in this context is inconsistent with the non-adjudicatory process, excuse me, the non-adversarial process that is supposed to be in play here. This is either a non-adversarial process or it's an adversarial process. If it's an adversarial process, then I believe your correct waiver should apply, but this is a non-adversarial process and it should not. All right, well, we've given you lots of extra time. It's a confusing, difficult case and they're Ms. Stern, good morning to you. Welcome back to our court. Please proceed. May it please the court. Mr. Whiting has failed to demonstrate that the Court of Veterans' Appeals misinterpreted any law, rule, or regulation. To the extent that I understand the argument that he's raising, I think what he's saying is that there was an unadjudicated claim before the court because although under 3.157B, a VA medical exam can be an informal claim, an informal claim for TDIU has to have evidence of unemployability. And I think Judge Michel got it exactly right when he said the board looked at the 1999 exam and said it did not evidence unemployability, therefore, it never was, it never raised a claim, an informal claim for TDIU, so there was nothing that the regional office should have addressed. But Ms. Stern, isn't it the case that in the ordinary run-of-the-mill application for benefits that the veteran often pro se writes a letter stating in some very lay fashion a claim. I have this injury, it has been with me since my time in the military, and I need to be paid some benefits to compensate for the injury. And then the regional office has to assist the veteran in pulling together the records from various governmental sources, and the RO will normally tell a veteran if you have any private records or medical or otherwise that are relevant, you better bring them forth, we'll get X, Y, and Z records, but anything else you have to get. And so a file is put together, it starts out with just the one page letter from veterans saying I claim benefits because I have this injury and I'm disabled by the injury, and it happened in service and so on, and then the file is built up through the sort of collaborative effort back and forth between the veteran and the officials at the RO. Now in this case, it seems clear that none of that follow-up developmental work occurred, we just have this one doctor's report which Mr. Carpenter wants us to treat as a claim for TDIU, but there's no development, there's no file, there's no bringing forth of evidence to clarify what the true facts were, and that seems a little bit worrisome, at least to me. Well, I think what he's doing is he's looking back and pointing, he's already, he's got evidence in the file and he's got repeated claims and regional office decisions, and now he's trying to reach back and say just for purposes of using that exam as an effective date, because that's what this case is all about, getting an earlier effective date, that that exam itself constitutes a claim, an informal claim for TDIU. Now if we were to decide that it doesn't constitute a claim for TDIU, then the case is over, but work with us a little bit because assume for the moment, just for questions, that we decide that it did qualify as a TDIU claim, then we've talked in questions about how in some fashion it seems to have been reviewed by the court and the board, to which Mr. Carpenter responds, well yeah, but not by the RO, and the regulations seem to contemplate the RO being the initial adjudicator, but what worries me is not so much who the initial adjudicator is, what worries me is how does the file of evidence get developed, and if it doesn't start out in the RO, it seems like there's a high danger that the evidentiary materials will never be amassed, and therefore we'll never know whether he was actually totally unemployable or not. We have certain statements in the 99 doctors report that suggest maybe yes, certain other statements that suggest maybe no, we have no employment records, we have no testimony from the veteran, we have no testimony from supervisors at jobs he held, or whether he could do it well or not do it well, a good employee, bad employee, indifferent, we're basically missing a lot of facts because there was never any development of the case claim file at the RO level. So what's your response to that? Well I think, and I really have to confess to not being 100% sure, but I think if the court were to find that the board was wrong and that it was an informal claim for TDIU because it did evidence unemployed, it would have to find that that was because it did evidence unemployability, which basically would be overturning a factual statement. But when you say evidence, that's a little bit confusing to me. A claim has to be stated and later it has to be proven with evidence. It may be that the same document that states the claim contains some relevant evidence, but not all the evidence. What I'm worried about is what about the rest of the evidence that logically one would have expected to be part of a full file before there's a final adjudication, assuming that there is in this doctor's report a proper informal TDIU claim. And I think what I'm trying to say is that we don't get to that point unless this court disagrees with the factual finding of the board. Let me back up a little bit. The factual finding being what? The factual finding being that the 1999 exam did not evidence any unemployability and therefore it was not an informal claim for TDIU. In Roberson versus Principe, this court said to have a medical exam be or to have an informal claim raise TDIU, you have to have the claim, whether it's a medical exam or some kind of written letter or something, and you have to have evidence of unemployability to raise the claim. And what the board said was as a fact. Presumably you have to have some evidence. Some evidence. You can't just say I'm injured, I'm disabled, pay me money. You'd have to say something a little bit more than that, whatever type of claim it is. But you seem to be suggesting that the veteran should be limited to the same evidence that's contained in the document, the partial evidence contained in the document that states the claim. That doesn't sound right. That may be the beginning of the file, but it shouldn't necessarily be the end of the file. And I understand Mr. Carpenter to be complaining, among other things, about the lack of development of evidentiary material before there was a decision on this TDIU claim. And I understand him to be saying that he wants that medical exam to be the source of an earlier effective date. And it can only be the source of an earlier effective date if at the outset it raised a claim for TDIU, which would mean having some evidence, according to Robertson. Well, if we find that this does constitute some evidence, maybe not sufficient to win, but sufficient to state the claim, then the question seems to be, well, what about the opportunity to put in the rest of the evidence, from employers, from the veteran, from other VA medical files, from whatever sources there might be? Well, and all I'm saying is for the court to find that there was some evidence would be to disagree with the board's factual determination that there was no evidence, and that that would be beyond the jurisdiction of the court. Now, if the court does that, beyond its jurisdiction, and finds there was some evidence, then we're in a whole different ballpark. But that would be— Is the question of whether a document states a claim or not a legal question that we have jurisdiction to review, or is it so fact-bound that we would not have jurisdiction to review whether document X states a claim? Well, I don't know that I can state it for all purposes, but for the purposes of this case, where the failure to state a claim, if you want to use those words, that type of language, is based on factual determination that there was no evidence of unemployability. That part is fact-bound. Now, didn't the board make a further—the board's 2005 opinion—I was asking this of your adversary before, but the questions got aggregated, and I'm not sure there was ever a clear answer to it. The board's March 2005 opinion listed in its fact-finding, as a finding of fact, that prior to the July 13, 2000 report, there was no unadjudicated claim or informal claim for disability. So was it a fact-finding that there was no informal claim ever made, and is that the fact-finding you're referring to? Yes, I would say that is a fact-finding, and that is what I'm referring to, and it's tied sort of—underneath that, it's tied to the underlying determination by the board that there was no evidence of unemployability. And I also want to point out that the regional office 2003 decision, which is the one that led to the board decision that led to the Court of Veterans Claim Decisions before this court, page 69 of the joint appendix, and this is a regional office decision, paragraph 2, talks about unemployability, and it says—they're talking about his discontinued employment in 1999, and the regional office says, Furthermore, the evidence does not clearly indicate that he was unemployable due to his disability at that time. His employers say that he left due to the lack of promotion. Where are you on 69? That's—it's number 2, paragraph number 2, and I started reading kind of in the middle. Okay. I see. Thank you. Okay. So, I mean, the regional office in 2003 is looking at the issue of unemployability and saying there is no evidence to indicate that he was unemployable at that time. The 1999 regional office— But they don't say no evidence. They say the evidence does not clearly indicate he was unemployable. That sounds like it's saying proof not sufficient. Well— That's not the same thing as saying no evidence. It's saying insufficient evidence, but not no evidence. But this court said that there has to be some evidence of unemployability, and the board looked at the regional office. It can't be said that the regional office didn't consider it at all, which is what I think that Mr. Whiting is saying here before this court. How did they get the evidence that, quote, his employers—in the same paragraph that you were just reading from, his employers stated that he left due to the lack of promotion opportunities. How did that evidence get to the regional office? Did they take testimony? Did somebody write in? Did he so state in that interview? Actually, in the 1999 medical exam, it said that he told the examiner—I guess it was a doctor—that he left due to lack of promotional opportunities. So I guess I don't—I can't answer your question whether, in addition to that, there was some contact with the employers, because I honestly do not know. But I do know that the 1999 exam had him, Mr. Whiting, reporting that the reason he left in 1999 was because he did not think he was going to get promoted and there were not promotional opportunities. But what about the language on page 33 of the medical exam that I think we referred to earlier, where the conclusion is that it did interfere, right? I'm sorry. That it did interfere, right? Am I misreading? On page 33 of the appendix. Yes, it said that it interfered, but it didn't make him unemployable. The difference between having some interference with someone's job, that maybe they don't do it as well, it's harder for them to do it, it has some impact on it, that's not the same as unemployable. So the medical exam did not say he was unemployable, and the 1999 regional office decision that considered that exam didn't say he was unemployable, and the 2003 regional office decision that didn't give him an earlier effective date said we don't see unemployability. So there's a difference between interfering with your ability to obtain and continue work, that that's not unemployability? Yes. Interfere is not a strong enough verb, it would have to say totally obliterates or something like that. Well it says that he would be unsuccessful, unable to gain employment as opposed to interfering. A lot of times, you know, when you hurt your back, sometimes it interferes with your ability to do your job very well, but you still get to the job and you still perform the job. It doesn't mean you're unemployable. So just back to one of the initial things we were talking about, just to tie this up I think, so it's a fact, the government's position is that it's a factual and not a legal conclusion as to whether or not the evidence was sufficient to establish an informal claim? And to raise the claim, that the board was saying he didn't even really raise the informal claim because there wasn't some evidence of unemployability, so there's no problem with what happened in this case procedurally. So then we don't have jurisdiction because you're saying we can't review that factual determination? Right, correct, and because there's no problem with that, there's no misinterpretation of law or regulation as Mr. Whiting claims. Let me ask you a procedural question. The board decision that we've been referring to apparently dated March 1, 2005, right? It begins on page 73 of the appendix? Yes. And on page 84 it's signed by H. N. Schwartz, Veterans Law Judge, Board of Veterans Appeals. Is it the norm for the Veterans Board to act through just a single judge as opposed to multiple judges? I actually don't know if it's the norm, although I do believe that it is sometimes done when there is not considered to be, that it's considered to be maybe not as complicated a case, but I'm not. Do you agree with my reading of this, that since no other veterans law judges are named anywhere in the opinion, that it appears to be a one-judge decision? I think that is the case. And the same at the Court of Veterans Appeals, a one-judge decision, not a decision of a panel? I believe that is the case. All right. Let's see if there's some rebuttal. Thank you, Mr. Carpenter. Thank you, Your Honors. All right. Mr. Carpenter, I think we better hold you to two minutes because we've already given you about 12 extra. I only have a couple of comments, Your Honor. I believe that the distinction has been properly drawn here between whether this is a factual matter or a legal matter. Obviously, it is Mr. Whiting's position that the question under 3.157B1 is a legal determination and that the Board may have made a factual finding, but that factual finding was essentially a legal determination, and that legal determination was incorrect. And it is the decision of the Veterans Court, which is on appeal here, and the decision of the Veterans Court was is that that was permissible, and we're suggesting that that is not permissible under the correct reading of the regulation. Furthermore, to clarify the question about— Before you go on to the next point, you keep using the pronoun that. That is not permissible. You have to explain to me exactly what you mean when you say that. What is it that's not permissible? For the Board to make the determination in the first instance, that the determination should have been made by the VA in the first instance, and that the Board should have recognized the existence of a VA medical record and then sent the matter back to the VA for a determination as to whether or not that VA medical record did arise to an informal claim under 3.157B1. What about Ms. Stern's—well, one of her numerous responses was to refer us to the RO's opinion in 2003 that deals with that. But it doesn't deal with that, Your Honor. Part of what goes on here is a sort of sleight of hand that they're actually making a decision when they're not making a decision. What they were talking about there is the question of effective date and suggesting that they can make a determination within a determination without making the correct determination or the ultimate determination under 3.157B1. That determination is, was that VA medical record an informal claim? Nowhere in that 2003 decision do they say that the 1999 VA examination was not an informal claim. They say that Mr. Whiting did not make a claim. But the question here under 3.157B1 is, did this VA medical record make that claim? All right. We thank both counsel. We'll take the appeal under submission.